Entered on Docket March 24, 2017

**Below is a Memorandum Decision of the Court.**

_/s/ Mary Jo Heston_
**Mary Jo Heston
U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

---

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

WILLIAM D. SELANDER, JR.,

             Debtor.

Case No. 16-43505

**MEMORANDUM DECISION ON MOTIONS FOR ABANDONMENT AND TO APPROVE SETTLEMENT**
(not for publication)

This matter came before the Court on March 16, 2017, on the Motion for Abandonment of Estate Property filed by William D. Selander, Jr. (Debtor) and the Motion to Approve Settlement filed by the Chapter 7 Trustee (Trustee). The Court considered the Motion for Abandonment at a hearing on February 2, 2017, a motion opposed by the Trustee and secured creditor Umpqua Bank (Bank). The Court continued the abandonment motion to March 16, 2017, to allow the Trustee to file and note a motion regarding a carve-out agreement for the same date and provide additional information concerning the value of the subject properties and any potential taxes owed. The Trustee filed the Motion to Approve Settlement (Settlement) on February 17, 2017, joined by the Bank. The Debtor opposed the Settlement. After the

hearing, the Court took the matter under advisement. Based on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

The Debtor filed this case under chapter 7 on August 22, 2016. In the bankruptcy schedules, the Debtor listed a 50% ownership, as a tenant-in-common, in the following real property located in Washington State: 24608 SE 416th Street, Enumclaw (Residence); 29828 SE 370th Street, Enumclaw; and 518 116th Avenue Court East, Edgewood (collectively "Properties"). For the real property located at 24608 SE 416th Street, the Debtor lists a value of $669,000, and a first position deed of trust held by Ditech Financial, LLC in the amount of $369,517.09. The Debtor also claims a Washington State homestead exemption in the amount of $125,000 under RCW 6.13.010. For the real property located at 29828 SE 370th Street, the Debtor lists a value of $144,000 and a first position deed of trust held by CitiMortgage in the amount of $55,159.69. For the real property located at 518 116th Avenue Court East, the Debtor lists a value of $327,800 and a first position deed of trust held by Bank of America Home Loans in the amount of $114,523.09. The 341 meeting of creditors was held on October 31, 2016. The claims bar date in the case was set as February 27, 2017.

The Bank filed a proof of claim in the amount of $5,155,857.76, consisting of a secured claim for $476,240.13 and an unsecured claim for $1,140,800.00, based on a judgment lien recorded on September 10, 2013. The Internal Revenue Service (IRS) filed a proof of claim in the amount of $703,661.88, consisting of a secured claim for $687,661.88, and an unsecured priority claim for $16,000[1], based on tax liens first recorded on October 8, 2014. Additional claims include unsecured claims for $6,838.81 filed by First National Bank of Omaha;

---

[1] This claim arises under 11 U.S.C. § 507(a)(8) for unassessed taxes as Debtor did not file a tax return for the tax years ending on December 31, 2014, and December 31, 2015.

$10,846.54 filed by World's Foremost Bank-Cabela's Club Visa; and $34,195.55 filed by Financial Pacific Leasing, Inc. Two additional unsecured claims were filed by David Traverso for $226,184.95 and $287,831, both based on the same judicial lien obtained on May 15, 2014.

On November 23, 2016, the Court entered an ex parte order authorizing the Trustee to act as his own attorney. On November 29, 2016, the Debtor's discharge was entered. The Debtor filed the Motion for Abandonment pursuant to 11 U.S.C. § 554[2] on December 5, 2016, seeking to abandon all three of the Properties. The Debtor also filed a declaration in support of the values given to the Properties in his bankruptcy schedules. The Debtor asserts that after deducting the first position consensual liens, the Bank's judgment lien, and the homestead for the Residence, there is negative equity in the Debtor's 50% interest in each of the Properties. The Debtor further argues that because his ownership interest in the Properties is that of a tenant-in-common, the Trustee would have to prevail in an adversary proceeding under § 363(h) to sell any of the Properties. Debtor also claims that the Trustee will have to factor in the tax consequences for the investment properties. As such, the Debtor insists the Properties are burdensome or of inconsequential value or benefit to the bankruptcy estate (Estate).

On January 12, 2017, the Bank filed a response to the Debtor's abandonment motion. The Bank disputes that the Debtor owns only 50% of the Properties and argues instead that the Properties are community property and therefore both the Debtor's interest and the interest of the co-owner are part of the bankruptcy Estate. The Bank raised this argument previously in response to Debtor's Motion to Avoid Lien, a motion Debtor withdrew following the Bank's opposition. The Bank further asserts that even if the Properties are owned as tenants-in-

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION ON
MOTIONS FOR ABANDONMENT
AND TO APPROVE SETTLEMENT- 3

common, instead of as community property, and using the Debtor's values, there is equity in the Properties after deducting the mortgage balances and homestead exemption for the Residence. The Trustee also filed a response, taking the same position as the Bank. The Trustee further argues that the Properties are worth more than scheduled by the Debtor, and the Trustee and Bank have created value for the Estate through the carve-out agreement now under consideration. While the Trustee filed a declaration in support of his response, the Trustee has not provided any evidence regarding the claimed higher values of the Properties. The Debtor's Reply filed on January 26, 2017, disputes the community property characterization of the co-owner's interest, contending that there is neither evidence nor case law to support the community property theory. The Debtor additionally argues against a carve-out agreement between the Bank and Trustee on policy grounds, and asserts that the co-owner would oppose a § 363(h) sale and any attempt to characterize her ownership interest as community property.

On February 1, 2017, the Trustee commenced an adversary proceeding, Adv. No. 17-04012, against the Debtor and Jill A. Eutenier[3], the alleged co-owner of the Properties, seeking a determination as to the extent and validity of the Debtor's interest in the Properties and approval to sell the Properties under § 363(h). On February 2, 2017, the Court entered an order extending the deadline to answer the complaint to April 14, 2017, and staying any further activity in connection with the adversary proceeding except for discovery as to the tax consequences of the sale of real property of the Estate.

---

[3] The Court will use the spelling of the co-owner's name as it appears on the Summons issued in the adversary although this spelling differs from the Debtor's Schedule H where the co-owner's name is spelled "Euteneier."

MEMORANDUM DECISION ON
MOTIONS FOR ABANDONMENT
AND TO APPROVE SETTLEMENT- 4

On February 17, 2017, the Trustee filed the Motion to Approve Settlement with the Bank regarding an agreed formula for a carve-out from the sale of the Properties. Under the proposed Settlement, the Estate will receive 25% of the net proceeds from the sale of each property or $15,000 from the proceeds, whichever is greater, with the remaining proceeds to go to the Bank. In the case of the Residence, the Settlement may also require that the Debtor receive a portion of the funds for his homestead exemption.[4] See Settlement Agreement and Release, attached to Budsberg Decl., ECF No. 49-1. In calculating the Estate's possible recovery, the Trustee uses property values higher than those set forth by the Debtor, based on apparent discussions with a real estate broker. The Trustee did not provide a declaration in regard to such value. From the Trustee's asserted values, he deducts only the mortgage balances in order to arrive at the Estate's estimated recovery. The Trustee represents that there would be no tax consequences for the sale of the Residence, and as to the other two properties, the Trustee stated he has yet to receive tax information from the Debtor or Ms. Eutenier. The Trustee also calculates the Estate's estimated recovery based on both ownership scenarios: community property or only 50% ownership. Utilizing the test to approve compromises set forth in In re A & C Props., 784 F.2d 1377, 1381 (9th Cir. 1986), the Trustee argues that under either ownership scenario, the Agreement with the Bank would be in the best interest of the unsecured creditors and the Estate.

In his response, the Debtor does not oppose the carve-out generally but instead disputes the Trustee's math. The Debtor notes that the Trustee fails to deduct the costs of sale, the homestead for the Residence, and capital gains for the investment properties. The Debtor

---

[4] The Trustee has objected to Debtor's claimed exemptions but this Order does not address any issues concerning distribution of the proceeds other than as between the Trustee and the Bank.

also argues that litigating the community property issue or selling under § 363(h) would result in high administrative expenses thereby negating any proposed benefit from the sales.  The Trustee filed what in essence is a reply at ECF No. 53 (Response to Debtor's Supplemental Filing Re: Carve-out Settlement and Liquidation Projections by the Trustee), contending that there would be a benefit to the Estate even using the Debtor's values and assuming the Debtor is only a 50% owner.  The Bank joined in the Trustee's reply.

## DISCUSSION

The issues before the Court are whether (1) the Debtor has established grounds for abandonment of the Properties under § 554, and (2) the Trustee has established grounds for approval of the carve-out agreement with the Bank.

### A. Request to Abandon Properties

On motion of a "party in interest" a court may order the trustee to abandon "any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  § 554(b).  The burden of proof is on the moving party. <u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 186 F.3d 346, 350 (3rd Cir. 1999).  An order to compel abandonment is "the exception, not the rule." <u>In re K.C. Mach. & Tool Co.</u>, 816 F.2d 238, 246 (6th Cir. 1987). "Abandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so." <u>K.C. Mach.</u>, 816 F.2d at 246.  A trustee is generally allowed a "reasonable" period of time to consider whether property could result in a benefit for the estate. 5 <u>Collier on Bankruptcy</u> ¶ 554.02[2], p. 554-5 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  The Bankruptcy Code also imposes on the Trustee a duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties in interest[.]"  § 704(a)(1).

Abandonment is ordinarily not available where the administration of an asset promises some benefit to the estate. In the Ninth Circuit there is no per se rule prohibiting the sale of fully encumbered property when the sale provides for a carve-out for the benefit of the chapter 7 estate from that creditor's collateral. Instead, the Ninth Circuit Bankruptcy Appellate Panel (BAP) has indicated that there is a rebuttable presumption of impropriety for the sale of fully-encumbered estate property. In re KVN Corp., 514 B.R. 1, 6-7 (9th Cir. BAP 2014). To rebut the presumption, a trustee must show that his or her basic duties have been fulfilled, there is a **prospect** for a meaningful distribution to unsecured creditors and the terms of the carve-out agreement have been fully disclosed to the bankruptcy court. KVN Corp., 514 B.R. at 6-7. Abandonment pursuant to § 554(b) is therefore generally reserved for instances where a trustee is merely churning property worthless to the estate just to increase fees. In re Viet Vu, 245 B.R. 644, 647 (9th Cir. BAP 2000); K.C. Mach., 816 F.2d at 246.

Although the Debtor has provided at least one scenario under which the Court could order abandonment of the Residence, he has not met his burden at this time to show that the Trustee is merely churning assets worthless to the Estate. In support of his argument that all of the Properties are worthless to the Estate, the Debtor focuses on the lack of equity in the Properties based on his scheduled values and his assertion that Ms. Eutenier holds a 50% interest in the Properties as a co-owner. According to the Debtor, the only potential for the Estate to benefit from the Properties is if the Trustee can show that the Estate holds a community property interest in the real property or the Court approves a sale pursuant to § 363(h). The problem with ordering abandonment at this time is that the Court is not convinced the Trustee has been afforded an adequate opportunity to investigate the facts as to the likely taxes due on any sale and any necessary facts relevant to a potential § 363(h) sale. The Trustee

has filed an adversary proceeding to determine the exact nature of the Debtor's interest in the Properties and to seek an order allowing a § 363(h) sale. However, these issues are not presently before the Court and for purposes of the Motion to Abandon, it is unnecessary to decide the issues presented in the adversary today.

The Court concludes that based on the current record, abandonment is not appropriate at this time because the Debtor has not conclusively established that the Properties are worthless to the Estate and the Trustee has not been provided a reasonable period of time to investigate the potential value of the Properties to the Estate. For purposes of this determination, the Court relies on the values provided by the Debtor, as they are the only values supported in the record by admissible evidence. As the owner of the property, the Debtor is competent to offer a lay opinion as to the value of his residence. Fed. R. Evid. 701; In re Wilson, 378 B.R. 862, 883 (Bankr. D. Mont. 2007). From the Debtor's values, the Court deducts the consensual mortgages and estimated 10% costs of sale, which the Trustee and Bank do not dispute. For the Residence, the Court further deducts the Debtor's homestead exemption[5] from the Debtor's asserted 50% ownership interest in order to arrive at the most conservative estimate of potential equity in that property for purposes of the Debtor's motion at this time. See In re Reed, 940 F.2d 1317, 1323 (9th Cir. 1991) (proper calculation to determine equity is to deduct encumbrances and costs of sale from the value of the total property, not just the debtor's interest, and then deduct the homestead exemption from the debtor's interest).

---

[5] On November 22, 2016, the Trustee filed a general "placeholder" objection to the Debtor's homestead exemption. At the March 16, 2017 hearing the Court raised the question of what effect, if any, § 522(c)(2)(A) might have on the Debtor's ability to claim a homestead exemption in this case. As the parties did not brief this issue, the Trustee and Bank did not dispute the claimed exemption on this basis and because resolution is not necessary to the Court's determination of the instant motions, it is assumed that the Debtor is entitled to the entire Washington State homestead exemption for purposes of considering the present motion.

Accordingly, solely for purposes of deciding the abandonment motion, the Court determines based on the evidence currently before it[6] that the potential value to the Estate of each parcel is as follows:

1. 24608 SE 416th St. (Residence)

| | |
|---|---|
| Value of the property per Debtor | $669,000.00 |
| Consensual Liens | ($369,517.09) |
| Est. Costs of Sale at 10% | ($66,900) |
| Equity before exemptions | $232,582.91 [$116,291.45 if § 363(h) property] |
| Debtor's Exemption | ($125,000) |
| Equity for Bank Lien[7] | $107,582.91 [($8,708.55) if § 363(h) property] |

2. 29828 SE 370th St.

| | |
|---|---|
| Value of the property per Debtor | $144,000.00 |
| Consensual Liens | ($55,519.69) |
| Est. Costs of Sale at 10% | ($14,400.00) |
| Equity for Bank Lien | $74,080.31 [$37,040.15 if § 363(h) property] |

3. 518 116th Ave Ct E

| | |
|---|---|
| Value of the property | $327,800.00 |
| Consensual Liens | ($114,523.09) |
| Est. Costs of Sale at 10% | ($32,780.00) |
| Equity for Bank Lien | $180,496.91 [$90,248.45 if § 363(h) property] |

Based on these calculations, if the Debtor is correct as to the co-ownership interest and the values of the Properties, a minimum of $127,288.60 could result from the sales, with $31,822.15 going to the Estate under the terms of the proposed Settlement subject to the Trustee proving the elements under § 363(h) for sale of co-owned property. However, if the

---

[6] The Trustee has made statements that based on consultations with brokers the Residence is worth substantially more than the Debtor's scheduled values. This may in fact turn out to be the case, but for purposes of the abandonment motion and without evidence concerning such values, the Court is using the lower values.

[7] Various amounts for the secured portion of the Bank judgment have been used in the pleadings filed thus far. The Court refers to the Bank's Proof of Claim to show that the Bank holds a judgment lien on all three properties in the amount of $5,155,857.76. See Claim 7-1.

MEMORANDUM DECISION ON
MOTIONS FOR ABANDONMENT
AND TO APPROVE SETTLEMENT- 9

Trustee and the Bank are correct, as much as $362,160.13 could be realized from sales of all three Properties, with $90,540.00 to the Estate before costs of administration.[8]

Notwithstanding the above-calculations, the Debtor contends that the potential for the Estate to realize any funds is remote. The Debtor points to the dearth of Washington cases supporting the Trustee's legal theory that the Properties constitute community property of the Debtor and Ms. Eutenier based on an alleged committed intimate relationship between the parties. The Debtor also contends that the two investment properties have substantial tax liability if sold, a fact not accounted for in the above calculation because of the lack of evidence provided by the Debtor. Those two inquiries are now the subject of a separate adversary proceeding. The Court stayed the adversary proceeding and time for an answer pending this decision.[9] The Trustee's further inquiry into the facts surrounding the Debtor's relationship with Ms. Eutenier and additional legal research concerning the underlying legal theories asserted may well convince him that it is not worth pursuing these theories in the adversary as to one or more of the Properties. Nevertheless, the Trustee is entitled to a limited opportunity to conduct an investigation in order to fulfill his fiduciary duties.

Similarly, the Debtor's argument that any sale of the investment properties would result in a net loss to the Estate due to significant tax liability is unsupported by the evidence before the Court. It is incumbent on the Debtor to provide the evidence necessary to show that the Trustee's further administration and investigation of the investment properties should come to an immediate end. No competent evidence has been provided of the actual taxes that would be due and owing on a sale of any of the Properties and the Trustee indicated at the hearing

---

[8] The Trustee suggested at the March 16, 2017 hearing that the value of the Residence may exceed $750,000.
[9] By separate order that stay will be lifted so that the parties may exchange documents.

MEMORANDUM DECISION ON
MOTIONS FOR ABANDONMENT
AND TO APPROVE SETTLEMENT- 10

that he has yet to receive documentation sufficient to allow him to determine what taxes may come due from a potential sale. Based on the record before it, the Court is unwilling to order the abandonment of the Properties at this stage of the proceedings based on unsubstantiated claims of potential tax obligations. Again, it would behoove the parties to the adversary proceeding to provide such information to the Trustee so that he can factor such information into his future decisions on whether or not to pursue the adversary claims and ultimate sales of the respective Properties.

The Court's decision not to order abandonment is limited to the facts adduced thus far. The Trustee has a duty to exercise sound judgment throughout his entire administration of this case in determining whether unsecured creditors will benefit from further actions. A requirement the Trustee recognized during argument at the March 16, 2017 hearing. The Court will deny the Motion for Abandonment as to 29828 SE 370th Street and 518 116th Avenue Court East. Such denial is without prejudice to the Debtor's right to renew the motion as additional facts are developed. The Court will continue the Motion for Abandonment as to the Residence located at 24608 SE 416th Street to 2:30 p.m. for a two-hour evidentiary hearing on June 8, 2017. The purpose of this evidentiary hearing is to provide the parties with the opportunity to further investigate and address factual matters, including the potential value of the property to the Estate in light of the carve-out agreement, the tax consequences to distributions to creditors of any sales, and the likelihood of success on the Trustee's § 363(h) and other legal claims.

B.  **Request to Approve Carve-Out Agreement**

The Trustee couches the proposed carve-out agreement with the Bank as a compromise and settlement subject to the Court's approval under A & C Props., 784 F.2d 1377. The Court agrees with the Debtor, however, that under the facts of this case the

Settlement and the <u>A & C Props.</u> factors—particularly the interests of creditors—should be viewed in connection with the criteria set forth in <u>KVN Corp.</u>, 514 B.R. at 8. In applying the <u>A & C Props.</u> factors with such an overlay, the Court finds that the settlement standards are met based on the evidence before the Court. The proposed settlement, as set forth in the agreement and clarified at the hearing, provides a general framework for creating potential value for the Estate and its creditors. Crucially, the Settlement leaves the Trustee with the necessary discretion to make decisions concerning future pursuit of litigation and sale of the Properties to insure a meaningful distribution to creditors.

"A chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured." <u>In re All Island Truck Leasing Corp.</u>, 546 B.R. 522, 532 (Bankr. E.D. N.Y. 2016). As set forth in the United States Trustee Handbook, "[g]enerally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest." U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees at 4-16 (2012). There may be an exception, however, where a secured creditor consents to a carve-out from proceeds for the benefit of unsecured creditors. Accordingly, when a trustee seeks to liquidate fully encumbered property there is a rebuttable presumption of impropriety. <u>KVN Corp.</u>, 514 B.R. at 6-7. To determine if the presumption has been rebutted, the court should consider the following:

> Has the trustee fulfilled his or her basic duties? Is there a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors? Have the terms of the carve-out agreement been fully disclosed to the bankruptcy court? If the answer to these questions is in the affirmative, then the presumption of impropriety can be overcome.

<u>KVN Corp.</u>, 514 B.R. at 8. Here, the Debtor does not dispute that the Trustee has fulfilled his basic duties, or that the terms of the carve-out agreement have been fully disclosed.

MEMORANDUM DECISION ON
MOTIONS FOR ABANDONMENT
AND TO APPROVE SETTLEMENT- 12
Case 16-43505-MJH    Doc 58    Filed 03/24/17    Ent. 03/24/17 14:33:04    Pg. 12 of 15

At issue is whether the Settlement provides "prospects for a meaningful distribution" to unsecured creditors. "Whether the amount of the proceeds paid to unsecured creditors is sufficient to constitute a 'meaningful distribution' is a question of fact committed to the bankruptcy court's discretion." In re Vu-Rose, Case No. 2:16-cv-09539-CAS, 2016 WL 7480248, at *4 (C.D. Cal. Dec. 28, 2016) (quoting KVN Corp., 514 B.R. at 8). A carve-out merely benefitting administrative professionals is improper. KVN Corp., 514 B.R. at 6-8.

In addition, the Court considers the fairness, reasonableness and adequacy of the Settlement using the test delineated in A & C Props. The four-part test requires the Court to determine:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

A & C Props., 784 F.2d at 1381. However, given that the Trustee is not actually asserting any claims against the Bank, the first three factors of the A & C Props. test are inapplicable to the facts of this case. The Court therefore primarily focuses on the interests of the creditors. Using this hybrid analysis, the Court finds that the Settlement is reasonable and has the potential to result in a meaningful distribution to creditors. Accordingly, the Court will approve the terms of the carve-out agreement.

The Settlement provides the Estate 25% of the net proceeds from the sale of each property or $15,000 from the proceeds, whichever is greater. The Trustee represented at the March 16, 2017 hearing that "net proceeds" as used in the Settlement is the gross sales proceeds less the consensual deeds of trust and costs of sale. The attorney for the Bank agreed. The Trustee further represented to the Court that the Settlement does not require the Trustee to pursue litigation of the community property issue or § 363(h) sale, but leaves to the Trustee's discretion and business judgment what actions he will or will not pursue for the

benefit of the Estate as to the pursuit of the adversary proceeding and the sale of the Properties. This is consistent with the Trustee's fiduciary obligations as well as the terms of the Settlement which do not specifically condition or restrict the Trustee's judgment in the administration of the Estate.

Using the most conservative figures based on the co-ownership of the Properties as calculated above, solely for purposes of the pending motions and based on the evidence presented by the parties[10], the Settlement at a minimum could provide the Estate proceeds of $37,532.11 from the two investment properties:

29828 SE 370th St.: $37,040.15 net proceeds x 25% = $9,260.03, so $15,000 to Estate

518 116th Ave. Ct. E: $90,248.45 net proceeds x 25% = $22,562.11 to Estate

While unsecured claims total almost $1.5 million, the proceeds to the Estate under the Settlement could satisfy the IRS's estimated priority unsecured claim for $16,000, leaving over $21,000 for distribution pro rata to the other unsecured claims. The Court disagrees with the Debtor's suggestion that priority claims are not considered in determining whether unsecured creditors will receive a meaningful distribution. See Vu-Rose, 2016 WL 7480248, at *4 (bankruptcy court did not abuse its discretion when it determined that payment to the IRS as an unsecured creditor represented a meaningful distribution). The Debtor also argued that in light of the claimed amounts any recovery is too small to consider meaningful. Again, the Court disagrees with the Debtor. See KVN Corp, 514 B.R. at 8 (focusing on amount recovered as compared to administrative expenses but not as to overall claims). Even though $37,000 constitutes just a small fraction of the total unsecured claims filed in this case, it at least allows for some distribution in an otherwise insolvent case, and in that respect is meaningful to the likely recipients.

---

[10] Again, for purposes of the pending motions only, these calculations assume the Debtor is entitled to the homestead exemption under the facts of this case. Further, these calculations do not account for capital gains since the Debtor has failed to provide any evidence of the tax amounts.

MEMORANDUM DECISION ON
MOTIONS FOR ABANDONMENT
AND TO APPROVE SETTLEMENT- 14

In making this finding, the Court cautions that this does not take into account the Trustee's potential fees or attorney compensation. Thus, even though the Court finds that the presumption of impropriety has been rebutted on the record before it, the Trustee ultimately must determine whether utilizing the carve-out will provide a net benefit, after payment of administrative costs, to unsecured creditors following a reasonable period of investigation and marketing. This issue necessarily will come before the Court upon a fee request for trustee compensation and attorney fees under § 330(a). See All Island Truck Leasing, 546 B.R. at 533-35 (where the court denied the fee requests of the trustee and employed professionals arising in connection with a carve-out agreement because the trustee's and attorneys' services provided no benefit to unsecured creditors). At the March 16th hearing the Trustee acknowledged the potential risk of non-payment of some of his fees should his legal efforts result in minimal distributions to creditors.

Based on the foregoing, the Court denies the Motion for Abandonment as to 29828 SE 370th Street and 518 116th Avenue Court East. Such denial is without prejudice to any party in interest's right to renew the motion as additional facts are developed. The Court will continue the Motion for Abandonment as to the Residence located at 24608 SE 416th Street to 2:30 p.m. on June 8, 2017, for a two-hour evidentiary hearing to provide the parties with the opportunity to further investigate the potential value of the property to the Estate, the tax consequences of any sales, and the likelihood of success on the Trustee's § 363(h) and other legal claims. The Court also grants the Trustee's Motion to Approve Settlement.

/ / / End of Memorandum Decision / / /

MEMORANDUM DECISION ON
MOTIONS FOR ABANDONMENT
AND TO APPROVE SETTLEMENT- 15
 Case 16-43505-MJH    Doc 58    Filed 03/24/17    Ent. 03/24/17 14:33:04    Pg. 15 of 15