**Below is a Memorandum Decision of the Court.**

*Mary Jo Heston*
_____
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

---

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>WILLIAM D. SELANDER, JR.,<br><br>                Debtor. | Case No. 16-43505<br><br>**MEMORANDUM DECISION ON MOTION TO AUTHORIZE DIVISION AND DISBURSEMENT OF HOMESTEAD EXEMPTION AND TO DISBURSE FINAL PAYMENT TO UMPQUA BANK** |

This matter came before the Court on September 6, 2018, on the motion to authorize division and disbursement of debtor's homestead exemption and to allow a final payment to Umpqua Bank filed by Chapter 7 trustee Brian Budsberg ("Trustee"). The United States, on behalf of its agency, the Internal Revenue Service ("IRS"), and the United States Trustee filed responses to the motion. Debtor William Selander ("Debtor") did not file a response, although the Trustee represented at the hearing that the Debtor opposed the motion as well. After the hearing, the Court took the matter under advisement. Based on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

## I. BACKGROUND

The Debtor filed this case under Chapter 7 on August 22, 2016. In the bankruptcy schedules, the Debtor listed a 50% ownership, as a tenant-in-common, in the following real property located in Washington State: 24608 SE 416th Street, Enumclaw ("Residence"); 29828 SE 370th Street, Enumclaw; and 518 116th Avenue Court East, Edgewood (collectively "Properties"). In his originally filed schedules the Debtor also claimed the full $125,000 Washington State homestead exemption in the Residence under RCW 6.13.010 (the "Homestead Exemption"). While the Trustee filed a "placeholder objection" [1] to all of the Debtor's exemptions, it appears that the objection to the Homestead Exemption was resolved by the time the Trustee filed his initial motion to authorize the sale of the Residence. (See Order Allowing Sale, ECF No. 68).

Umpqua filed a proof of claim in the amount of $5,155,857.76, consisting of a secured claim for $476,240.13 and an unsecured claim for $1,140,800.00, based on a judgment lien against the Properties recorded on September 10, 2013. The IRS filed a proof of claim for $703,661.88, consisting of a secured claim for $687,661.88, and an unsecured priority claim for $16,000, [2] based on tax liens first recorded on October 8, 2014. Given the secured claims against the Properties, Debtor filed a motion for an order directing the Trustee to abandon the Properties (the "Abandonment Motion") on December 5, 2016. Trustee and judicial lien creditor Umpqua Bank ("Umpqua") opposed abandonment of the Properties, and the Trustee instituted a separate adversary action to determine the nature and extent of the estate's interest in the co-owned Properties.

---

[1] Trustees in this District routinely file general objections which indicate the need for additional information in all asset cases.
[2] This claim arises under 11 U.S.C. § 507(a)(8) for unassessed taxes as Debtor did not file a tax return for the tax years ending on December 31, 2014, and December 31, 2015.

MEMORANDUM DECISION ON
MOTION TO AUTHORIZE DISBURSEMENT
AND DISTRIBUTION OF HOMESTEAD- 2

At the hearing on the Abandonment Motion the Trustee presented a negotiated carve-out agreement with Umpqua which allocated to the estate the greater of 25% or $15,000 from the net proceeds of sale of each of the Properties (the "Carve-Out Agreement") which would otherwise be paid to Umpqua on account of its judgment lien. In the case of the Residence, the Trustee also represented that Debtor would potentially receive a portion of the funds for the Homestead Exemption if the Residence sold.[3]

Following the hearing, the Court denied the Abandonment Motion and approved the Carveout Agreement. (Memo. Dec. Mot. to Abandon and Apprv. Settlement, ECF No. 58; Budsberg Decl., ECF No. 49-1). Eventually, Debtor, the co-owner of the Residence, and the Trustee agreed to allow the sale of the Residence as co-owned property. (See Order Allowing Sale, ECF No. 68). The agreement between the parties provided that "[a]ny sale of the property identified in this adversary proceeding as the Homestead property shall be shall be [sic] strictly conditioned upon the following . . . [Debtor] will receive $125,000.00 for his homestead exemption from the sale of the 'homestead' property." (Stip. 3:8-10, ECF No. 62-1).

Trustee subsequently filed a motion to authorize a sale of the Residence, but the motion was opposed by the IRS on the basis that the Trustee's payment of the $125,000 Homestead Exemption directly to the Debtor ignored the existence of tax liens that the IRS asserts would take priority over such exemption. Trustee and the IRS resolved the objection with a stipulation authorizing the sale of the Residence but reserving the issue of whether the Debtor or the IRS was entitled to the $125,000 in sale proceeds allocated for the Homestead Exemption. (Agmt. Re: United States' Obj., ECF No. 98). At no time during the aforementioned motions and

---

[3] Throughout his pleadings in support of selling the Residence, the Trustee has consistently indicated that he is not objecting to payment of the Homestead Exemption. (See Mot. to Sell Estate Prop. 3:25, ECF No. 85; Amd. Mot. to Sell Estate Prop. 2:20, ECF No. 131; Mot. to Auth. Disb. 1:18-21, ECF No. 146).

MEMORANDUM DECISION ON
MOTION TO AUTHORIZE DISBURSEMENT
AND DISTRIBUTION OF HOMESTEAD- 3

stipulations did the Trustee disclose the possibility of invading the Homestead Exemption for the payment of administrative expenses under § 724(b). [4]

The Trustee was able to sell the Residence for a gross sale price of $825,000. (Rpt. Of Sale, ECF No. 145). According to the Final ALTA Settlement Statement, after payment of the first mortgage in the amount of $354,952.42, costs of closing (including real estate commissions), and distribution to the co-owner, the Trustee received $198,846.39 on behalf of the bankruptcy estate. (Rpt. Of Sale, ECF No. 145). The ALTA Statement indicates that $49,711.60 is for the estate's 25% share of the net proceeds, $125,000 for the Homestead Exemption, and $24,134.79 for Umpqua (but paid to Trustee). Id.

After the sale of the Residence closed, the Trustee filed this motion requesting that the Court authorize distribution of the Homestead Exemption to the IRS, pursuant to its Notice of Federal Tax Lien against the property, but only after significant reductions for the costs of sale and administrative expenses, including the Trustee's statutory fee for selling the property. Trustee argues this surcharge against the $125,000 amount claimed as exempt is permissible pursuant to § 724(b). The IRS argues that § 724(b) is inapplicable because the Trustee is distributing homestead proceeds in which the estate has no interest and which are not otherwise subject to surcharge for administrative expenses pursuant to § 522(k). The United States Trustee also opposes the Trustee's request on the basis that the recapture of administrative costs was not disclosed previously, the Trustee's motion fails to indicate what the Trustee will do with the funds should he recover them from the Homestead Exemption, and it is unclear how the Trustee calculated his statutory fee.

---

[4] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION ON
MOTION TO AUTHORIZE DISBURSEMENT
AND DISTRIBUTION OF HOMESTEAD- 4

## II. DISCUSSION

The sole issue before the Court is whether a trustee may use the tax lien subordination provisions of § 724(b) to pay administrative expenses associated with the sale of real property from a debtor's allowed exemption in homestead proceeds still subject to the tax lien.

Section 724(b) permits a trustee to subordinate an otherwise unavoidable tax lien in "property in which the estate has an interest" to the payment of certain types of administrative claims including the actual, necessary costs and expenses of preserving the estate. §§ 724(b)(2), 507(a)(1), and 503(b)(1)(A). Trustee proposes to use the subordination provisions of § 724(b) to cover his compensation for the sale of the Residence and to recover sale and closing costs which have been previously satisfied from the proceeds (e.g., real estate agent commissions and title insurance). The total amount the Trustee requests is $103,857.13—of which $44,500 is directly attributable to his potential maximum statutory fee pursuant to § 326.[5]

The IRS argues that the subordination provision of § 724(b) does not apply in this instance because of the exempt nature of the $125,000 in proceeds subject to the tax lien. Specifically, the fact that the proceeds are attributable to the Debtor's allowed Homestead Exemption in which the estate has no interest and which are not subject to reduction for the payment of administrative expenses as set forth in § 522(k). Section 522(k) provides that "[p]roperty that the debtor exempts under this section is not liable for payment of any administrative expense . . . ." § 522(k). The prohibition on surcharging administrative expenses is only subject to a limited exception for recovery of transfers not applicable to this case. See §§ 522(k)(1) and (2). The IRS contends this apparent statutory conflict must be resolved in favor of not surcharging the Homestead Exemption.

---

[5] The Trustee clarified at the hearing that he is not presently requesting that the Court award him any specific fee, but that the amount represents the hypothetical maximum compensation he could take from the sale.

Trustee posits that the subordination provisions of § 724(b) applies, notwithstanding the apparent conflict with § 522(k), because § 724(b) applies to tax liens and the Trustee is paying the IRS because of just such a lien.[6] Ordinarily, the bankruptcy trustee may sell fully encumbered property despite the claim of an exemption where the encumbrances consist of both consensual liens and tax liens. See, e.g., Reeves v. Callaway (In re Reeves), 546 Fed.App'x. 235, 241-42 (4th Cir. Nov. 20, 2013) (affirming order authorizing trustee to sell residence notwithstanding claimed homestead exemption where IRS agreed to carveout of its lien). Although the IRS is requesting that the Trustee distribute the money directly to it on account of the lien, the fact pattern here is markedly different from those cases upon which the Trustee relies. In this instance, the tax lien is actually junior to the judicial lien of Umpqua and is not secured by any equity in the Residence because the Umpqua lien exceeds the Residence's value. Unique in this case is the fact that Debtor's Homestead Exemption is superior to Umpqua's lien but not the statutory tax lien, a fact the Trustee does not dispute.

Ordinarily, a debtor's allowed exemption removes property (or a debtor's interest up to a certain value in such property) from the bankruptcy estate and the reach of that debtor's creditors. See Schwab v. Reilly, 560 U.S. 770, 791 (2010); Gebhardt v. Gaughan (In re Gebhardt), 621 F.3d 1206, 1210 (9th Cir. 2010). An exception to the general exemption scheme is § 522(c)(2)(B), which provides that exempt property remains liable for a properly noticed tax lien. Accordingly, the IRS retains its interest in the Homestead Exemption even after that property is removed from the bankruptcy estate.

To avoid a conflict between § 724(b) and the Code's exemption scheme, the Trustee relies on a non-binding bankruptcy case from outside of the Ninth Circuit to argue that the tax lien invalidates or steps ahead of the claimed exemption. In the Trustee's view, the superior

---

[6] No party addressed whether the Trustee is even able to invoke § 724(b) given that § 724(e) requires that he first exhaust unencumbered funds in the estate and recover what he can from secured claims through § 506(c).

interest of the IRS in the Homestead Exemption funds allows him to use the subordination provisions of § 724(b) notwithstanding the claimed exemption. See In re Laredo, 334 B.R. 401, 412 (Bankr. N.D. Ill. 2005). Although the court in Laredo did state that a claimed homestead exemption was "inferior" to the tax lien, a point the debtors conceded in that case, that court was not faced with an IRS claim junior to a judgment lien. Laredo, 334 B.R. at 411.

The decision in Laredo is a natural consequence of the facts before that court. The debtors claimed an exemption of $15,000 in their residence under Illinois law. Laredo, 334 B.R. at 410. The trustee sold the residence for a gross sales price of $380,000. Id. at 413. The property was encumbered by two consensual mortgages totaling $249,971.21 and a tax lien totaling $114,842.07. Id. at 413-414. Therefore, *before costs of sale*, the "equity" in the property to which debtor's exemption could attach was $15,186.72, representing the difference between all unavoidable encumbrances against the property and the gross sales price. The debtors conceded that the Illinois exemption could not override the IRS lien, a legal reality since the Supremacy Clause of the Constitution renders state homestead exemptions ineffective against a federal tax lien. See United States v. Rodgers, 461 U.S. 677, 701 (1983). The actual issue for the court was whether the claimed homestead exemption could reach the $15,186.72 difference between gross sales price and unavoidable liens, when the costs necessarily incurred to sell the property were in excess of this amount.

The court in Laredo followed the plain language of § 724(b) to reach the conclusion that under the statute's distribution scheme, where the IRS lien encumbered all of the available *net equity* there was nothing for the debtor's exemption to reach:

> Accordingly, the Court holds that the broker's commission, closing costs, and all administrative expenses incurred in liquidating the Property must be paid before proceeds can be applied in partial satisfaction of the tax lien. As a result of this priority scheme, there will be no funds available to pay the Debtors their homestead exemption.

MEMORANDUM DECISION ON
MOTION TO AUTHORIZE DISBURSEMENT
AND DISTRIBUTION OF HOMESTEAD- 7

Laredo, 334 B.R. at 413-14. Effectively costs of sale came from the IRS' share of the sale proceeds, not the debtor's exemption. The Laredo court did not confront the problem of an IRS lien on a debtor's interest in exempt property where the lien was otherwise not secured by equity in the real property because of the existence of a senior judgment lien. The Court finds the Trustee's reliance on Laredo unpersuasive given the aforementioned factual differences.

The situation before this Court is that of an IRS lien relying on a debtor's homestead exemption for its very existence. In other cases where the IRS lien is in an inferior position to another creditor, courts have distinguished the nature of the lien interests. For example, the debtor in In re Stauffer attempted to argue that it was not equitable to allow the IRS lien to remain on a homestead exemption because the lien would effectively leap ahead of senior avoidable judicial liens. In re Stauffer, CV-S-95-281 GEB, 1995 WL 545302, at *4 (E.D. Cal. June 2, 1995). The Stauffer court had no trouble disposing of this argument, "[p]rohibiting the Stauffers from voiding the IRS' tax liens, however, does not allow these liens to 'leap frog' what were previously more senior liens . . . whereas the judicial liens avoided by the Stauffers had no equity against which to attach the IRS' tax liens attached to the Stauffers' homestead property exemption and cannot be avoided." Stauffer, 1995 WL 545302, at *4 (internal citation omitted). Similarly, when describing the "priming" nature of a tax lien where judgment creditors hold liens senior to the IRS, the bankruptcy court for the Western District of Wisconsin explained that "[t]he IRS remained junior to the judgment liens except to the extent of the exempt property which the IRS could reach but the judgment lienors could not." In re Clark, 116 B.R. 672, 675 (Bankr. W.D. Wis. 1989). It is apparent from these cases that in certain circumstances a tax lien may in fact exist on property that is not otherwise subject to the interests of creditors.

There is no conflict between § 724(b) and § 522(k) because those two sections speak to different kinds of property. Section 724(b) involves property of the estate where the IRS holds a valid lien. In this scenario, Congress has made the decision that the bankruptcy trustee may

subordinate the secured tax claim to pay administrative expenses. What § 724(b) does not address is the property a debtor removes from the estate by exemption, but still subject to a continuing lien of the IRS. This property is not covered by the plain language of § 724(b), which provides that it only applies to property "in which the estate has an interest . . . ." § 724(b). Exemptions remove property, or a certain value of that property, from the estate. Alsberg v. Robertson (In re Alsberg), 68 F.3d 312, 315 (9th Cir. 1995). Debtor's Homestead Exemption removed the value of $125,000 from the estate but such exemption was powerless to eliminate the interest of the IRS in those funds claimed with the exemption.

In the absence of the IRS lien, the Trustee's request would amount to the naked use of exempt funds to pay costs of the sale and his fees—a result prohibited by § 522(k). See Law v. Siegel, 571 U.S. 415, 422 (2014) (exempt funds are only liable for administrative expenses if one of the two narrow exceptions of § 522(k) applies). To obtain consent of the Debtor and the co-owner to the sale of the Residence, Trustee agreed that he would pay the Homestead Exemption. (Stipulation, ECF No. 62-1). Though cloaked in a subordination argument, effectively the Trustee seeks to do more than merely subordinate a tax lien, he claims the ability to pull exempt property back into the estate and surcharge the exemption. In the Court's view, this is not a result Congress intended with the enactment of § 724(b).

Although the Laredo court described the debtor's homestead as being inferior to the tax lien, the cases cited *supra* indicate that instead of actually priming the claimed exemption, § 522(c)(2)(B) merely provides that the tax lien remains on the homestead claimed and exempted from the estate. If there is no other creditor superior to the IRS, this is not an issue. The debtor is unable to avoid the lien, and Congress has made the choice that the bankruptcy estate should benefit from selling the property and paying some of the lien proceeds to priority creditors and administrative expenses. Here, the Trustee did not need the IRS lien interest to sell the property, he obtained a carveout from Umpqua's lien proceeds for that. The Umpqua

lien is inferior to the Homestead Exemption. The costs associated with the sale were also paid at closing. Instead of using § 724(b), the Trustee used the Carveout Agreement to fund the sale of the Residence. There is no reason to believe that in this scenario Congress intended the IRS would pay for the liquidation while all other claimants (primarily the Trustee and Umpqua) receive funds.

### III. CONCLUSION

The Court finds that the effect of the claimed homestead is to remove the $125,000 in sale proceeds from the estate pursuant to the claimed exemption, but without removing the lien interest of the IRS. Rather than requiring the IRS to institute a separate action outside of bankruptcy court, or attempt to seize the proceeds of $125,000 from the Debtor's bank account, payment of the proceeds to the IRS instead of the Debtor merely recognizes the reality that the Debtor does not have an unfettered right to use the funds once they ceased to be property of the estate. Accordingly, the Court denies the Trustee's motion and he is instructed to remit all funds attributable to the Homestead Exemption to the United States pursuant to the claim filed by its agency, the Internal Revenue Service. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

/ / / End of Memorandum Decision / / /